UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12633-RGS

GREGORIO ROSARIO

v.

PAUL REVERE TRANSPORTATION, LLC, et al.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

February 13, 2014

STEARNS, D.J.

Gregorio Rosario, acting *pro se*, brought this "hybrid" § 301/unfair

representation Complaint under the Labor Management Relations Act

(LMRA), 29 U.S.C. § 185.[1]  Rosario alleges that his former employer, Paul

Revere Transportation, LLC (Revere), and its general manager, Richard Daley,

breached a collective bargaining agreement (CBA) by terminating his

employment without giving him a prior written warning and by enforcing a

cellular telephone policy that is purportedly contrary to federal law.  Rosario

---

[1] A "hybrid" complaint under federal labor law consists of two separate but independent causes of action. " The suit against the employer rests on § 301 [of the LMRA], since the employee is alleging a breach of the collective-bargaining agreement. The suit  against the union is one for breach of the union's duty of fair representation, which is implied under  the scheme of the National Labor Relations Act. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-165 (1983).  The employee to succeed must prevail on both causes of action. *Goulet v. Penn Motor Express, Inc.*, 512 F.3d 34, 44-45 (1st Cir. 2008).

further alleges that Teamsters Local Union No. 25 (Union), and two Union officials, Sean O'Brien and David Pietroforte, breached their duty of fair representation by refusing to take a grievance on his behalf to arbitration. All defendants now move to dismiss Rosario's Complaint.

BACKGROUND

The facts, in the light most favorable to Rosario as the non-moving party, are as follows. Revere is a licensed bus company incorporated in Massachusetts. Revere owns and operates a fleet of some 135 vehicles. Rosario was employed as a bus driver by Revere and was a member of Teamsters Local 25, the bargaining agent for Revere's drivers. Rosario's employment was subject to the terms of a CBA negotiated between Revere and the Union on behalf of drivers working in the Logan Express and EZ Ride divisions. As relevant here, the CBA provides that a Revere employee may "institut[e] a grievance initially to protest his/her suspension or discharge," but only the Union – and not the individual employee – has the right to pursue a grievance to arbitration. CBA, Art. IV, § 3. An arbitration demand must be made within thirty days of the receipt of the answer to the grievance, or the grievance is waived. *Id*. Art. IV, § 1(e).

On October 11, 2012, Rosario telephoned a dispatcher using his personal cell phone to report a problem with a passenger at the Woburn Logan Express

Terminal.  Rosario was on duty, but not inside his bus when he made the call.

At the end of his shift, Rosario was placed on suspension by Revere.  After an

investigation, and a disciplinary hearing attended by representatives of Revere

and the Union, Rosario was terminated on October 19, 2012, for violating a

policy banning drivers on certain routes from using or possessing a cell phone

while on duty.  The Union filed a grievance on Rosario's behalf one week later.

A grievance hearing was held on November 6, 2012.  Revere denied the

grievance, citing the Massachusetts Port Authority's (Massport) and the

Massachusetts Bay Transportation Authority's (MBTA) zero-tolerance policies

for cell phone use and possession by on-duty drivers of contracted vehicles.

On November 7, 2012, Pietroforte, the Union Business Agent, told

Rosario "that the paper work for arbitration had been faxed to the Union

attorney for further action against [Revere]."  Compl. ¶ 16.  Rosario pursued

the matter with Pietroforte the following week and asked to be kept informed

about the progress of the arbitration.[2]  Pietroforte did not respond.  On

---

[2] Rosario has moved for judgment on the pleadings.  Judgment on the
pleadings, however, may issue only after the pleadings are closed.  Because
defendants have moved to dismiss plaintiff's complaint instead of filing an
answer, the pleadings remain open and Rosario's motion must be <u>DENIED</u>.
In the motion, Rosario alleges facts that are not included in the Complaint,
such as the allegation that Pietroforte told him on November 26, 2012, that the
Union would take his grievance to arbitration after the holidays.  The court
considered converting the motion into one for summary judgment pursuant to

February 2, 2013, having heard nothing from the Union, Rosario contacted

Pietroforte, to request information on the status of the arbitration. A similar

request was made to Union President O'Brien on February 13, 2013. Both

requests were met with silence. Rosario filed the instant action in

Massachusetts Superior Court on September 27, 2013. Defendants

subsequently removed the case to this court on federal question grounds on

October 22, 2013.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's

analysis. "First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S.

at 678. "Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss." *Id*. at 679. A claim is facially plausible if its

factual content "allows the court to draw the reasonable inference that the

---

Fed. R. Civ. P. 12(d). However, because the allegations, and all reasonable
inferences that may be drawn from them, would still fail to state an LMRA
claim – much less withstand summary judgment – conversion would serve no
constructive purpose.

defendant is liable for the misconduct alleged." *Id*. at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436,442 (1st Cir. 2010).

## DISCUSSION

A hybrid § 301/fair representation action, as explained earlier, "formally comprise[s] two causes of action," one against the employer, the other against the union.[3] *Reed v. United Transp. Union*, 488 U.S. 319, 329 (1989). "To prevail against either the company or the [u]nion, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the [u]nion." *DelCostello*, 462 U.S. at 165 (internal quotations, citation, and alterations omitted). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id*.

As an initial matter, Rosario's claims against O'Brien and Pietroforte fail because "union agents are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process."

---

[3] A "pure" section 301 action "is a suit brought directly by a union against an employer to enforce the CBA." *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000).

*Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989), citing *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247-249 (1962).  Rosario's claim against Revere's General Manager Daley for breach of the CBA likewise fails because Daley is not a signatory to the CBA and liability under § 301 does not, in most cases, reach beyond the employer to its non-party agent.  *See, e.g., Antol v. Esposto*, 100 F.3d 1111, 1118 (3rd Cir. 1996) ("[I]t appears that insulation of corporate officers and agents from liability for section 301 violations was, in part, a basis for the parallel insulation of officers and members of local unions from liability for section 301 violations." (internal quotations and citations omitted)); *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th Cir. 1980) ("The law is well settled that individual employees are not proper parties to a suit brought under § 301 of the [LMRA].  Rather, § 301 suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought."); *Spielmann v. Anchor Motor Freight, Inc.*, 551 F. Supp. 817, 820 n.2 (S.D.N.Y. 1982) ("Individual employees cannot be made defendant parties to a cause of action for breach of contract under LMRA § 301."). *Compare Mass. State Carpenters Pension Fund v. Atl. Diving Co., Inc.*, 635 F. Supp. 9, 12 (D. Mass. 1984) (personal liability may be imposed upon a dominant corporate officer-shareholder in pension fund payment cases under ERISA and § 301 of the LMRA).  Accordingly, Rosario's claims against the

individual defendants will be dismissed.

Revere and the Union next argue that Rosario's claims are barred by §
301's six-month statute of limitations for hybrid claims.  *See Arriaga-Zayas*
*v. Int'l Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 13
(1st Cir. 1987), citing *DelCostello*, 462 U.S. at 169-172.  "A cause of action in a
hybrid Section 301/fair representation suit arises when the plaintiff knows, *or*
*reasonably should know*, of the acts constituting the union's alleged
wrongdoing." *Id.* (internal quotations and citation omitted) (emphasis added).
Rosario was fired on October 19, 2012, and his grievance was denied on
November 6, 2012. Although the Complaint states that Pietroforte told him on
November 7, 2012, that his grievance application had been submitted to the
Union's attorney for "further action," Rosario claims that his ensuing queries,
made on November 13, 2012, February 2, 2013, and February 13, 2013, fell on
deaf ears.  Defendants argue that Rosario should have known that the Union
was not pursuing arbitration when the CBA's thirty-day arbitration filing
period expired in early December of 2012.  *See Metz v. Tootsie Roll Indus.,*
*Inc.*, 715 F.2d 299, 304 (7th Cir. 1999) (employee should have known that the
union would not pursue a grievance to arbitration when the time to elect
arbitration under the CBA had passed). *Cf. Demars v. Gen. Dynamics Corp.,*
779 F.2d 95, 97 (1st Cir. 1985) (employee should have known of the union's

purported breach of duty when the union withdrew the grievance it had filed on his behalf).  Whether or not the elapse of the 30 days should have put Rosario on notice of the Union's alleged breach, Rosario admits in his Complaint that his final attempts to followup with the Union on February 2 and 13, 2013, were completely ignored.  By the latter date, Rosario had every reason to suspect that the Union had decided not to pursue his grievance to arbitration, yet he made no further attempt to investigate. Because Rosario did not bring the lawsuit within six months of February 13, 2013, the date of his last inquiry, his claims fall outside of the statute of limitations.

Notwithstanding this procedural bar, Rosario's Complaint fails to state a claim under the LMRA.  "In a hybrid suit for breach of contract/breach of duty of fair representation under section 301 . . . a plaintiff must prove *both* that the employer broke the collective bargaining agreement and that the union breached its duty of fair representation, in order to recover against either the employer or the union." *Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 330 (1st Cir. 1992) (emphasis in original).

Turning first to the latter requirement, "[a] union breaches its duty of fair representation only when it engages in arbitrary, discriminatory, or bad faith conduct." *Id*. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is

so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotations and citation omitted). The only facts that Rosario alleges (including those contained in his motion for judgment on the pleadings) in support of his claims of "conspiracy" and "bad faith" against the Union are: (1) that the Union elected not to pursue his grievance to arbitration; and (2) that it failed to inform him of its decision. These allegations, at best, amount to a claim of negligence on the part of the Union, which "will not usually rise to the level of a breach of its duty of fair representation." *Demars*, 779 F.2d at 98; *see also id.* ("Courts have ordinarily held that, while a union's failure to notify a grievant may be negligent and in poor judgment, such an omission, without anything more, does not violate a union's duty of fair representation.").

Rosario's contention that Revere breached the CBA by terminating his employment is also factually flawed. His claim again rests on two grounds: (1) that the CBA required a prior written warning before discharge; and (2) that Revere's cell phone ban violates federal law. Although the CBA states that an employee must receive at least one written notice of a complaint before being discharged, the agreement also lists twenty exceptions to this requirement, including "gross disrespect" for passenger safety, and instances in which

Revere is ordered to terminate employment of a driver by Massport.[4]  CBA, Art

V, § 3.  Rosario's termination falls within both exceptions.  Revere issued a

company-wide memorandum on April 4, 2012, reminding employees that "[i]t

is against Massport policy that any [driver] operating a vehicle under the

Logan/Logan Express contract [ ] have their cellphone [sic] or any electronic

device on their possession."  Def.'s Ex. C.[5]  The memorandum further states

that "[a]ny employee caught talking on their cellphone [sic] while operating a

Paul Revere or Massport contracted vehicle in service *or out of service* will be

terminated."  *Id*. (emphasis added).  Because Revere was enforcing a binding

Massport passenger safety policy, it was not required to issue Rosario a written

warning before terminating his employment.

Finally, Revere's (and Massport's) cell phone policy does not violate

federal law.[6]  An exception to the federal regulation prohibiting drivers of

---

[4] This exception also states that the request by Massport "will be sufficient to warrant discharge without recourse through grievance or arbitration."  CBA, Art V, § 3.

[5] Defendants properly rely on memoranda from Massport and Revere in their motions to dismiss as Revere's cell phone policy is referenced in Rosario's Complaint and is central to his claims. *See Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).  Although Rosario challenges the memoranda from Massport as "fraudulent," he does not dispute the authenticity of Revere's April company-wide circular.

[6] In his motion for judgment on the pleadings Rosario contends that a ruling of the Chelsea District Court reversing the Department of

commercial motor vehicles from using a mobile telephone permits use of such

a phone "when necessary to communicate with law enforcement officials or

other emergency services."  49 C.F.R. § 392.82(c).  The regulations, however,

set only minimal requirements for commercial vehicle drivers; they do not

prohibit the imposition of more stringent standards.  *See* 49 C.F.R. § 392.2

(drivers required to operate vehicles in accordance with local laws unless

regulations impose a higher standard of care).  Accordingly, Rosario's breach

of contract claim against Revere also fails.

---

Unemployment Assistance's denial of unemployment benefits has *res judicata* effect on the federal preemption issue because in that proceeding Judge Wexler indicated in a margin note that Revere's cell phone policy "may" be contrary to federal law.  Pl.'s Ex. 1-F.  Because the issue in front of Judge Wexler – whether Rosario knowingly violated a reasonable and uniformly enforced policy – was not identical to the LMRA claim at issue here, and because the preemption "holding" was not essential to the earlier judgment, collateral estoppel does not apply.  *See Fay v. Fed. Nat'l Mortg. Ass'n*, 419 Mass. 782, 790 (1995).

ORDER

For the foregoing reasons, defendants' motions to dismiss the Complaint are <u>ALLOWED</u>.  The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE